IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01478-REB-CBS

JONATHAN ESTES,
        Plaintiff,
v.

J.G. FORTUNATO,
CAPTAIN NEGLEY,
J. MOON, and
OPTOMETRIST ELRID,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) Defendants Fortunato and

Negley's Motion to Dismiss (filed December 13, 2010) (Doc. # 41); and (2) Defendant

Moon's Motion to Dismiss (filed February 14, 2011) (Doc. # 57).  Pursuant to the Order

of Reference dated July 22, 2010 (Doc. # 9) and the memoranda dated December 14,

2010 (Doc. # 42) and February 15, 2011 (Doc. # 58), these matters were referred to the

Magistrate Judge.  The court has reviewed the Motions, Mr. Estes' "Opposition Brief[s]"

("Responses") (filed January 3, 2011 (Doc. # 48) and March 11, 2011 (Doc. # 63)), Mr.

Estes' "Motion to Supplement Summary Judgment through Interlineation"

("Supplement") (filed February 7, 2011) (Doc. # 56), the pleadings, the entire case file,

and the applicable law and is sufficiently advised in the premises.

1

I.      Statement of the Case

Mr. Estes is currently incarcerated at the Sterling Correctional Facility ("SCF") in the Colorado Department of Corrections (CDOC).  Mr. Estes' original Prisoner Complaint was accepted by the court for filing on June 23, 2010.  (*See* "Prisoner's Motion and Affidavit for Leave to Proceed pursuant to 28 U.S.C. § 1915" (Doc. # 1); "Order Directing Clerk to Commence Civil Action . . ." (Doc. # 2);  Complaint (Doc. # 3)). On November 23, 2010 Mr. Estes filed his second motion to amend his pleading, which the court construed as his Amended Complaint.  (*See* Courtroom Minutes/Minute Order (Doc. # 36);  Courtroom Minutes/Minute Order (Doc. # 39);  Amended Complaint (Doc. # 37)).

Mr. Estes brings three claims in the AC pursuant to 42 U.S.C. § 1983.  (*See* Doc. # 37 at 1 of 8).  In Claim One, Mr. Estes alleges that Defendants Fortunato "and optometrist Elrid deprived him of his Eighth Amendment right to due process by being deliberately indifferent to the plaintiff's serious medical need."  (*See* Doc. # 37 at 2 of 8). Mr. Estes alleges that on July 8, 2008, he began noticing that he was losing his vision. (*See* Doc. # 37 at 2 of 8).  He filed a medical request kite to be seen by the facility's optometrist.  (*See id.*).  Mr. Estes alleges that on July 29, 2008, he was seen by Defendant Elrid who viewed his eyes with a flashlight but made no attempt to further investigate his complaints of vision loss.  (*See id.*).  On October 8, 2008, August 21, 2009, and October 13, 2009, Mr. Estes filed grievances complaining of his vision loss and that the treatment he received was inadequate.  (*See id.*).  Defendant Fortunato denied the grievances.  (*See id.*).  Mr. Estes alleges that on January 20, 2010, he was

2

seen by Dr. Goldsburg, who arranged for him to see an eye specialist.  (*See id.*).  The

specialist conducted a slit-lamp examination and diagnosed Mr. Estes with

Keratocunus, an eye disease.  (*See id.*).  Mr. Estes was referred back to Defendant

Elrid for treatment.  (*See id.*).  Mr. Estes was provided a set of eye-glasses in May

2010.  (*See id.*).  Mr. Estes alleges that this treatment was ineffective.  (*See id.*).

In Claim Two, Mr. Estes alleges that Defendant Moon "has violated sixth, fifth,

and fourteenth Amendment rights to due process by intentionally rejecting, withholding,

inspecting, and destroying the plaintiff's legal mail."  (*See* Doc. # 37 at 4 of 8).  "The

plaintiff also contends that his First Amendment right was violated."  (*See id.*).  Mr.

Estes claims that he mailed to his trial attorney by mistake a letter and legal documents

that were intended for his appellate attorney.  (*See id.*).  On August 4, 2010, the letter

and the documents were sent back to Mr. Estes "as return to sender."  (*See id.*).  Mr.

Estes alleges that when SCF received the returned mail, Defendant Moon rejected the

mail.  Defendant Moon sent Mr. Estes a notice of the rejection requesting that he

provide information to staff within ten days where he wished to have the mail re-sent or

it would be destroyed.  (*See id.*).  Mr. Estes alleges that Defendant Moon ultimately

destroyed the letter and documents.  (*See id.*).

In Claim Three, Mr. Estes alleges that on February 9, 2009 and March 3, 2009,

he filed grievances with Defendant Negley claiming that several unidentified

correctional officers were writing him up for class two misconduct reports.  (*See*  Doc. #

37 at 6 of 8).  Mr. Estes alleges that he never received a due process hearing prior to

being written up.  (*See id.*).  The grievances were denied by Defendant Negley. (*See*

*id.*).

II.     Standard of Review

        Defendants move to dismiss the AC for lack of subject matter jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can

be granted pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants make no arguments that

would constitute a challenge to the allegations of subject matter in the AC.

Nevertheless, "[f]ederal courts have an independent obligation to determine whether

subject-matter jurisdiction exists, even in the absence of a challenge from any party,

and thus a court may *sua sponte* raise the question of whether there is subject matter

jurisdiction at any stage in the litigation." *1mage Software, Inc. v. Reynolds & Reynolds

Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (internal quotation marks and citation

omitted).  Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction

over the subject matter."

        A court may dismiss a complaint for "failure to state a claim upon which relief can

be granted."  Fed. R. Civ. P. 12(b)(6).

        Under Rule 12(b)(6), [d]ismissal is appropriate only if the
        complaint, viewed in the light most favorable to plaintiff, lacks enough
        facts to state a claim to relief that is plausible on its face.  A claim is
        plausible on its face when the plaintiff pleads factual content that allows
        the court to draw the reasonable inference that the defendant is liable for
        the misconduct alleged. The plausibility standard is not akin to a
        probability requirement, but it asks for more than a sheer possibility that a
        defendant has acted unlawfully.
        Although plaintiffs need not provide detailed factual allegations to
        survive a motion to dismiss, they must provide more than labels and
        conclusions or a formulaic recitation of the elements of a cause of action.
        Furthermore, conclusory allegations are not entitled to the assumption of

4

truth.

*Masters v. Gilmore*, 663 F. Supp. 2d 1027, 1037 (D. Colo. 2009) (internal quotation marks and citations omitted).

Because Mr. Estes appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint");  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.   Analysis

Section 1983 creates a cause of action where a  "person . . . under color of any

statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to

be subjected, any citizen of the United States or other person . . . to the deprivation of

any rights, privileges or immunities secured by the Constitution."  42 U.S.C. § 1983.

Section 1983 does not create any substantive rights; rather, it creates only a remedy for

violations of rights secured by federal statutory and constitutional law.  *Chapman v.

Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  *See also Southern

Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In

order to successfully state a cause of action under section 1983, [Mr. Estes] must

allege . . . the deprivation of a federal right. . . .") (internal quotation marks and citation

omitted).  "To state a claim for relief in an action brought under § 1983," Mr. Estes must

establish that he was "deprived of a right secured by the Constitution or laws of the

United States, and that the alleged deprivation was committed under color of state law."

*American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).


A.      Liability of Defendants in their Official Capacities

        Mr. Estes does not specify whether he is suing Defendants in their official

capacities, their individual capacities, or both.  To the extent Mr. Estes may be suing

Defendants in their official capacities under § 1983, he is actually attempting to impose

liability on their employer, the Colorado Department of Corrections.  *See Meade v.

Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in

his official capacity imposes liability on the entity he represents");  *Hafer v. Melo*, 502

U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as

6

a suit against the state);  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)

("a suit against a state official in his or her official capacity is not a suit against the

official but rather is a suit against the official's office. As such, it is no different from a

suit against the State itself").

    The Eleventh Amendment provides: "[t]he Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects

of any Foreign State." U.S. Const. amend. XI.  Absent considerations not present in this

case, the Eleventh Amendment forbids a suit for damages against a state in federal

court.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993)

(citation omitted).  The CDOC is considered an agency of the State of Colorado.  *See*

Colo. Rev. Stat. § 24-1-128.5.  Such entities cannot be sued for monetary damages

arising from alleged conduct which deprives a plaintiff of his or her civil liberties.  The

Eleventh Amendment confers total immunity from suit, not merely a defense to liability.

*Ambus*, 995 F.2d at 994 (citation omitted).  Further, states and state officials sued in

their official capacities are not "persons" within the meaning of § 1983.  *Will v. Michigan

Department of State Police*, 491 U.S. 58, 71 (1989).  Thus, any claim for money

damages brought against Defendants in their official capacities under § 1983 is barred

by the Eleventh Amendment and properly dismissed with prejudice for lack of subject

matter jurisdiction.

    Actions in federal court seeking injunctive relief against state officials are not

always barred by the Eleventh Amendment.  *See Ex parte Young*, 209 U.S. 123, 159-

7

60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official).  *See also Will*, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ") (quoting *Kentucky v. Graham*, 473 U.S. at 167 n. 14).  Mr. Estes does not specify in the AC the relief he seeks.  As Mr. Estes does not specifically seek injunctive relief from Defendants in their official capacities, the court need not further address liability of the Defendants in their official capacities for injunctive relief.

B.     Liability of Defendants in their Individual Capacities

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities.  *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Estes is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law.  *Graham*, 473 U.S. at 165-67.  Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted);  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted);  *Bennett v. Passic*, 545 F.2d 1260,

8

1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

Mr. Estes brings Claims One and Three against Defendants Fortunato and Negley based on their denial of grievances that he filed.  On October 8, 2008, August 21, 2009, and October 13, 2009, Mr. Estes filed grievances complaining of his vision loss and complaining that the treatment he received was inadequate.  (*See* Doc. # 37 at 2 of 8).  Defendant Fortunato denied these grievances.  (*See id.*).  On February 9, 2009 and March 3, 2009, Mr. Estes filed grievances complaining that several unidentified correctional officers were writing him up for several class two misconduct reports and that he never received a due process hearing prior to being written up.  (*See id.* at 6 of 8).  Defendant Negley denied these grievances.  (*See id.*).

Defendants Fortunato and Negley argue that Mr. Estes' claims against them must be dismissed for failure to allege the requisite personal participation.  Mr. Estes specifically brings Claim Three against Defendant Negley under the theory of *respondeat superior*.  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (citation omitted).  *See also Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151-52 (10th Cir. 2006) ("There is no concept of strict supervisor liability under § 1983.");  *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1290 (D. Colo. 2009) ("*respondeat superior* is not within the purview of § 1983").  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual

9

actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.  There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise.  *Serna*, 455 F.3d at 1151-52.  *See also Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Mr. Estes argues that Defendants Fortunato and Negley had sufficient knowledge of the constitutional violations against him by way of the grievances they denied.  (*See* Response (Doc. # 48), Supplement (Doc. # 56)).  Defendants Fortunato and Negley cannot be held liable for an alleged constitutional violation on the basis that they were aware of or denied grievances without an allegation or evidence of direct responsibility for the alleged violations.  The Tenth Circuit has repeatedly held "that the denial of . . . grievances alone is insufficient to establish personal participation in the alleged constitutional violations." *See Whitington v. Ortiz*, 307 Fed. Appx. 179, 191, 193 (10th Cir. 2009) (holding complaint failed, "except for conclusory allegations, sufficiently to allege the necessary direct personal participation" in the claimed injury) (internal quotation marks and citation omitted).[1]  *See also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.") (citing *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) ("Lomholt failed to state First Amendment claims. . . because defendants' denial

---

[1]    Copies of unpublished decisions cited are attached to this Recommendation.

of his grievances did not state a substantive constitutional claim")); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").  There is no basis for holding Defendants Fortunato and Negley liable for merely the denial of grievances.  Mr. Estes' allegations that Defendants Fortunato and Negley were put on notice by grievances do not provide adequate factual grounds that these Defendants were personally involved in the violation alleged.  By reviewing grievances, Defendants Fortunato and Negley could not have participated in the alleged conduct that occurred before the grievance was filed.  Mr. Estes' allegations and evidence do not support a claim that these Defendants had any direct involvement or personal participation in the alleged violations or that they exercised control, directed, or tacitly authorized any unconstitutional actions.  Mr. Estes has not adequately alleged "an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates."  *Serna*, 455 F.3d at 1151 (internal quotation marks and citations omitted).  Mr. Estes' failure to allege or demonstrate the requisite personal participation leaves no basis for holding Defendants Fortunato or Negley individually liable under § 1983.  The claims alleged against Defendants Fortunato and Negley are properly dismissed for failure to state a claim for which relief can be granted.

C.      Eighth Amendment Claim (Claim One) against Defendant Fortunato

        Defendant Fortunato argues in the alternative that Mr. Estes fails to state a claim for violation of the Eighth Amendment.  Mr. Estes alleges that Defendant Fortunato was

deliberately indifferent to his serious medical needs by failing to investigate his complaint that he was losing his vision and by failing to schedule him with an appointment with an eye specialist.

To the extent that Mr. Estes alleges violation of his "Eighth Amendment right to due process" and the Fourteenth Amendment (*see* Doc. # 37 at 2 of 8), he is a convicted prisoner incarcerated at SCF.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners "after [the State] has secured a formal adjudication of guilt in accordance with due process of law."  *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (internal quotation marks and citation omitted).  In *Whitley v. Albers*, 475 U.S. 312, the Supreme Court recognized that the same facts could give rise to both an Eighth Amendment cruel and unusual punishment claim and a substantive due process claim under the Fourteenth Amendment.  475 U.S. 312, 326-27 (1986).   However, "the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners . . . ."  *Id.* at 327.   "Every circuit that has considered the question has concluded that the Eighth Amendment is the primary source of substantive rights of prisoners and that, with regard to the rights of convicted prisoners, the legal standards under the Eighth and Fourteenth Amendments generally are congruous."  *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1494 n. 6 (10th Cir. 1990) (citations omitted).

> We agree with the views of the other circuits. Thus, we conclude that the
> safety and bodily integrity of convicted prisoners implicates both the
> Eighth Amendment's prohibition against cruel and unusual punishment
> and the Fourteenth Amendment's substantive protection against state

deprivation of life and liberty without due process of law, and that the legal standards under the two amendments are identical under the facts of this case.  Because the Eighth Amendment provides the primary source of protection for prisoners, we will, however, refer to the standard as an Eighth Amendment standard.

*Berry*, 900 F.2d at 1494 n. 6 (10th Cir. 1990) (citations omitted).

The Tenth Circuit Court of Appeals has "previously noted that where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process."  *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (citations omitted).  *See also DeShaney v. Winnebago County Dep't of Social Servs*., 489 U.S. 189, 198 n. 5 (1989) ("In Whitley, . . . , we suggested that a similar state of mind [deliberate indifference] is required to make out a substantive due process claim in the prison setting."); *Daniels v. Williams*, 474 U.S. 327, 340 n. 16 (1986) (Stevens, J., concurring in judgments in *Daniels* and *Davidson v. Cannon*, 474 U.S. 344 (1986) ( "in these circumstances [inmate injured in attack by fellow inmate], . . . the substantive constitutional duties of prison officials to prisoners are defined by the Eighth Amendment, not by substantive due process"); *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) ("[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims.") (citations, internal quotations, and brackets omitted), *overruled in part on other grounds by Unitherm Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006).  Mr. Estes' claim alleging

13

"deliberate indifference to [his] serious medical need" is properly addressed under the Eighth Amendment, as "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."). *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).[2]  The court therefore applies the Eighth Amendment standard in evaluating Mr. Estes' claim for deliberate indifference to his serious medical need.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII.  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v.  Gamble*, 429 U.S. 97, 104-06 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.") (internal quotation marks and citation

---

[2]    Mr. Estes has not cited and the court has not found legal authority that his claims are otherwise "covered by substantive due process."  *See Hall v. Zavaras,* 2008 WL 5044553 * 3 (D. Colo. 2008) ("Under both Supreme Court and Tenth Circuit precedent, then, [plaintiff] may bring separate § 1983 claims under the Eighth Amendment and the Fourteenth Amendment, provided that the latter claims are 'covered by' substantive due process.") (citation omitted).

omitted).

An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Self*, 439 F.3d at 1230 (internal quotation marks and citation omitted). Under the subjective inquiry, the defendant must have acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. To meet the subjective component of an Eighth Amendment claim, a plaintiff must establish the defendant "knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 847). For a prison official to be found liable of deliberate indifference under the Eighth Amendment, "the official must 'know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference.'" *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837).

Defendant Fortunato first argues that Mr. Estes's allegations of loss of vision do not state a sufficiently serious medical need. The court disagrees. Mr. Estes'

allegations describe a medical condition that may be recognized as serious and contains sufficient factual allegations to support the objective component of an Eighth Amendment claim.  *See, e.g., Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (inmate's need for prescription eyeglasses constituted a serious medical condition where, as result of not having glasses, the inmate suffered headaches, his vision deteriorated, and he was impaired in daily activities);  *Mitchell v. Maynard*, 80 F.3d at 1443 (removal of prescription eyeglasses from a prisoner "could constitute a violation of his right to be free of cruel and unusual punishment[ ]");  *Kersh v. Derozier*, 851 F.2d 1509, 1510, 1513 (5th Cir. 1988) (evidence sufficient for a jury finding of deliberate indifference to serious medical needs when piece of hay in eye caused redness, tearing, bleeding, and eventual loss of sight);  *Freeman v. Lockhart*, 503 F.2d 1016, 1017 (8th Cir. 1974) (prisoner with tuberculosis that had settled in his eyes and that eventually led to permanent impairment of his vision alleged a sufficient injury for claim of failure to provide medical treatment; optometrist had recommended surgery to address the "hazard to his vision" caused by the disease);  *Benter v. Peck*, 825 F. Supp. 1411, 1416 (S. D. Iowa 1993) (holding that the plaintiff prisoner had a serious medical need where his eyesight, without glasses, fell within the parameters of blindness);  *Gutierrez v. Peters*, 111 F.3d 1364, 1373, n. 8 (7th Cir. 1997) (factors that may be indicative of a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain," as well as the "potential for

16

harm if medical care is delayed or denied.") (internal quotation marks and citation omitted).

Defendant Fortunato next argues that Mr. Estes fails to adequately allege the subjective component of an Eighth Amendment claim: that he knew of and consciously disregarded a substantial risk of serious harm to Mr. Estes. The court agrees that Mr. Estes' allegations are insufficient to establish that Defendant Fortunato "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks and citation omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley*, 475 U.S. 312, 319 (1986). Mr. Estes' claim against Defendant Fortunato is based only on the denial of grievances. After Mr. Estes filed his grievances, he was examined by an optometrist and an eye specialist and provided eye-glasses. Mr. Estes fails to allege any involvement by Defendant Fortunato after January 20, 2010. Mr. Estes states "Nor have I ever seen Dr. Fortunato." (*See* Doc. # 56 at 3 of 7). Mr. Estes' allegations against Defendant Fortunato do not state the subjective component of his Eighth Amendment claim. For this reason also, Mr. Estes' claim against Defendant Fortunato is properly dismissed for failure to state a claim for which relief can be granted.

D.      First Amendment Claim (Claim Two) against Defendant Moon

Mr. Estes brings this claim against Defendant Moon pursuant to the First, Fifth,

Sixth, and Fourteenth Amendments for the alleged wrongful destruction of a piece of

legal mail that he mistakenly sent to the wrong individual and that was sent back to him

marked return to sender.  Mr. Estes alleges violation of his First Amendment right to

freedom of speech, right to due process, and right to access to the courts.[3]

Prisoners have a basic First Amendment right to communicate by mail with

persons outside the prison.  *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010).

"Correspondence between a prisoner and an outsider implicates the guarantee of

freedom of speech under the First Amendment and a qualified liberty interest under the

Fourteenth Amendment."  *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996).  *See also*

*Procunier v. Martinez*, 416 U.S. 396, 409–19 (1974) (recognizing First Amendment and

Fourteenth Amendment interests in inmate correspondence), *overruled on other*

*grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).  That right does not

prohibit prison officials from inspecting mail for security purposes.  *Thornburgh*, 490

U.S. at *407.*

Prison inmates have a constitutional right to meaningful access to the courts.

*Bounds v. Smith*, 430 U.S. 817, 823 (1977).  "[P]rison officials may not affirmatively

hinder a prisoner's efforts to construct a nonfrivolous appeal or claim."  *Green v.*

*Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992).  "Any deliberate impediment to access

---

[3]   To the extent that Mr. Estes refers to the Fifth Amendment as legal authority for Claim Two, the Fifth Amendment due process clause only protects against due process violations caused by federal government actors.  There is no allegation in this civil action of any conduct by federal government actors.  The prison where the events occurred is a state facility and Defendants are or were state employees.  As none of the Defendants are subject to the due process clause of the Fifth Amendment, Mr. Estes fails to state a claim pursuant to the Fifth Amendment.

[to the courts], even a delay of access, may constitute a constitutional deprivation." *Id.* (internal quotation marks and citation omitted).  An allegation of denial of access to the courts is viewed as an aspect of the freedom of petition clause of the First Amendment, *Harrison v. Springdale Water and Sewer Comm'n*, 780 F.2d 1422, 1427 n. 7 (8th Cir. 1986), as guaranteed by the Fourteenth Amendment.  *See Bounds v. Smith*, 430 U.S. at 822 (Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to "adequate, effective, and meaningful" access to the courts.).  *See also Green*, 977 F.2d at 1389 ("The constitutional right of access to the courts is guaranteed by the Due Process Clause[ ] of the . . . Fourteenth Amendment[ ].");  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("the right of access is founded on the due process clause and guarantees the right to present to a court of law allegations concerning the violation of constitutional rights.");  *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985) (prisoner's constitutional right of access to the courts is accorded by article 4 of the Constitution and the Fourteenth Amendment, as well as by the First Amendment right to petition).

To the extent that Mr. Estes alleges violation of his Sixth Amendment rights, the Sixth Amendment provides certain rights "[i]n all criminal prosecutions."  U.S. CONST. Amend. VI.  The United States Court of Appeals for the Fifth Circuit has recognized that a prison official's interference with a prisoner's legal mail may violate the prisoner's First Amendment right to free speech as well as his Sixth Amendment right of access to the courts.  *Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir. 1993).  *But see Alvarez v. Horel*, 415 Fed. Appx. 836, 837 (9th Cir. 2011) (Sixth Amendment right to counsel applied only to

criminal proceedings, and was not implicated by prison employee's conduct in allegedly opening state prisoner's legal mail).

Prisoners' First Amendment right to communicate by mail includes having incoming and outgoing mail processed, unless a legitimate penological interest warrants otherwise, and it prohibits prison officials from "restrict[ing] mail simply to harass inmates or [confiscating] mail that complies with prison policy." *Gee*, 627 F.3d at 1188. To adequately plead a claim that prison officials violated an inmate's First Amendment rights with regard to mishandling of mail, the inmate must allege facts showing that: (i) his mail was mishandled; (ii) that the particular named Defendant was responsible for that mishandling; (iii) that the mishandling was purposeful; and (iv) there is a plausible inference to be drawn that the basis for that mishandling was not reasonably related to a legitimate penological interest. *Id.* at 1187-88; *Treff*, 74 F.3d at 195; *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) (negligent mishandling of mail does not give rise to constitutional liability).

The letter in question is Mr. Estes' own letter that was returned to sender because it was misaddressed by Mr. Estes. (*See* Doc. # 37 at 4 of 8). Defendant Moon provided Mr. Estes "a rejection of mail notice that stated the plaintiff had ten days to resend the legal mail out or it will be destroyed." (*See id.*). Mr. Estes' own representations indicate that he chose not to resend the letter when given the opportunity. (*See* Doc. # 63 at 9 of 12 (Mr. Estes "decided not to send the legal mail to his attorney so that he would be able to meet the court imposed deadline of 8/19/10 or 8/22/10")). Mr. Estes has not adequately alleged how his mail was purposefully

20

mishandled in a manner not reasonably related to a legitimate penological interest. There are no allegations showing an improper motive on the part of Defendant Moon. Mr. Estes does not adequately plead a claim that Defendant Moon violated his First Amendment freedom of speech rights with regard to his mail.[4]

To the extent Mr. Estes alleges violation of his right of access to the courts based on the piece of mail, he must plead and prove that he was actually impeded in his ability to conduct a particular case. *See Lewis v. Casey*, 518 U.S. 343, 348-55 (1996) (To plead a violation of this right, a plaintiff must allege that the state's interference with his mail led to an "actual injury" by "frustrat[ing]," "imped[ing]," or "hinder[ing] his efforts to pursue a legal claim."). In order to satisfy the actual injury requirement, the plaintiff must show that prison officials frustrated or impeded the plaintiff's ability to file non-frivolous direct appeals from his conviction, a habeas corpus petition or a civil rights claim pursuant to § 1983 "to vindicate basic constitutional rights." *Lewis*, 518 U.S. at 351, 354-55 (internal quotation marks and citation omitted). *See also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove

---

[4]    To the extent that Mr. Estes argues that Defendant Moon violated state law and prison administrative regulations (*see, e.g.*, Doc. # 63 at 3, 4, 6, 8 of 12), "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)). *See also Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim under § 1983.") (citations omitted); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process . . . ."). Mr. Estes may not prevail on a § 1983 claim based on an alleged violation of state law or administrative regulations.

prejudice arising from Defendants' actions."); *Smith v. Maschner*, 899 F.2d at 944 (an inmate alleging interference with legal access must allege specific facts showing that a "distinct and palpable" injury resulted from defendants' conduct.).

Mr. Estes does not adequately allege actual injury resulting from the destruction of his piece of mail. Mr. Estes alleges that he intended to pursue *pro se* a petition for writ of certiorari in the U.S. Supreme Court and a motion for postconviction relief and that the returned mail contained a "letter from an important witness." (*See* Doc. # 37 at 4 of 8). Mr. Estes' allegations do not specifically connect the returned piece of mail to any injury. Mr. Estes refers to no case numbers or the nature of the nonfrivolous legal claims he was pursuing. Mr. Estes' allegations and arguments are too conclusory to state or support a plausible claim that he was impeded in his effort to pursue a nonfrivolous legal claim. "[C]onclusory allegations are not sufficient to state a constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citation omitted). Mr. Estes had notice of his returned mail on August 4, 2010 and declined the opportunity to resend it to the correct address. (*See id.* at 4 of 8; Doc. # 63 at 9 of 12). Rather than providing the correct address to Defendant Moon, Mr. Estes filed kites on August 3, 5, 8, and 10, 2010 and grievances on August 10 and October 1, 2010. (*See* Doc. # 37 at 4 of 8). Mr. Estes' allegations indicate that he did not miss any deadlines or that any case was dismissed due to Defendant Moon's withholding of the returned mail. Mr. Estes chose not to resend the mail and had sufficient time prior to August 22, 2010 to file his *pro se* petition for writ of certiorari. It was not until October 4, 2010, two months after he received notice that the returned mail was rejected and a month and a

half after the deadline for filing his petition for certiorari, that Mr. Estes filed a kite

instructing staff to send the documents to the correct address.  (*See* Doc. # 37 at 4 of

8).  Mr. Estes does not adequately allege that his access to the courts was impaired or

that he suffered any actual injury due to the returned mail.  "[A]n isolated incident,

without any evidence of improper motive or resulting interference with [Mr. Estes'] right

to counsel or to access to the courts, does not give rise to a constitutional violation."

*Smith v. Maschner*, 899 F.2d at 944.  Mr. Estes' claim under the First and Sixth

Amendments for denial of access to the courts is properly dismissed for failure to state

a claim for which relief can be granted.

    To the extent that Mr. Estes alleges violation of his right to due process under

the Fourteenth Amendment, he does not specify whether he is alleging a procedural or

substantive due process claim.  Substantive due process claims cannot be raised

where those claims could be brought under other constitutional amendments or

provisions that provide the specific legal tests and standards for addressing those

claims.  *Albright v. Oliver*, 510 U.S. 266, 273 (1994).  "Where a particular amendment

'provides an explicit textual source of constitutional protection' against a particular sort

of government behavior, 'that amendment, not the more generalized notion of

substantive due process, must be the guide for analyzing these claims.' " *Id.* (citing

*Graham v. Connor*, 490 U.S. 386, 395 (1989)).  *See also United States v. Lanier*, 520

U.S. 259, 272 n. 7 (1997) (It is well established that "if a constitutional claim is covered

by a specific constitutional provision . . . the claim must be analyzed under the standard

appropriate to that specific provision, not under the rubric of substantive due process.").

As Mr. Estes' due process claim is based on the same allegations that give rise to his claims for denial of access to the courts, the underlying allegations are properly analyzed under the relevant standards for a First Amendment claim, rather than standards that govern a claim for substantive or procedural due process.  *See Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1226 (6th Cir. 1997) (noting that right of access to the courts is sometimes construed as stemming from the Due Process clause of the Fourteenth Amendment, and that where courts instead find a violation of the First Amendment Petition Clause, they decline to consider duplicative claims under the Fourteenth Amendment).  Consequently, because the court recommends that Mr. Estes' claim for denial of access to the courts be dismissed for failure to state a claim for which relief can be granted, the court recommends that any due process claim likewise be dismissed.

To the extent Mr. Estes' claim is based on an alleged procedural due process violation under the Fourteenth Amendment for the deprivation of his property, inmates have a right to procedural due process when their mail is rejected.  *See Procunier v. Martinez*, 416 U.S. 396, 417-19 (1974) (decision to censor or withhold delivery of letter must be accompanied by minimum procedural safeguards; inmate should be notified of rejection), *overruled on other grounds by, Thornburgh v. Abbott*, 490 U.S. at 413-14; *Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004) (same).  It is well settled that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.

24

For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Here, Mr. Estes may pursue remedies through the prison grievance system for the deprivation of his property and request an adequate remedy or may have an available remedy in state court pursuant to Colo. Rev. Stat. §§ 24-10-104 and 24-10-118.  (See Administrative Regulation ("AR") 850-04, Exhibit A-1 to Motion to Dismiss (Doc. # 57-1);  *Klein v. McClaury*, 221 F.3d 1352, *2 (10th Cir. 2000) (Exhibit A-2 to Motion to Dismiss (Doc. # 57-2)).  Mr. Estes pursued his remedies through the prison grievance system for the deprivation of his piece of mail by immediately filing kites and filing a Step 1 grievance on August 10, 2010.  (*See* Doc. # 37 at 4 of 8; doc. # 63 at 5 of 12).  Either the prison grievance procedures, which [Mr. Estes] pursued, or a state law claim . . . provides an adequate post-deprivation remedy, such that [Mr. Estes'] federal constitutional claim is subject to dismissal." *Elliott v.* Cummings, 49 Fed. Appx. 220, 228 (10th Cir. Oct. 9, 2002) (citations omitted).  In sum, Claim Two of the Amended Complaint fails to state a claim upon which relief can be granted.

E.     Qualified Immunity

To the extent that Mr. Estes is suing Defendants in their individual capacities, Defendants raise the defense of qualified immunity.  Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

As the court has concluded in this Recommendation that Mr. Estes fails to state any claim against Defendants Fortunato, negley, or Moon for violation of a constitutional right, these Defendants in their individual capacities are entitled to qualified immunity. *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

F.     Defendant Elrid

Mr. Estes is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. (*See* June 23, 2010 "Order Directing Clerk to Commence Civil Action and Granting Plaintiff Leave to Proceed Pursuant to 28 U.S.C. §1915" (Doc. # 2)). Pursuant to the December 14, 2010 "Order Requiring Service by United States Marshal", a "2d Waiver of Service of Summons" was filed with the court on December 15, 2010. (*See* Docs. # 44 and #

46). The waiver was completed by Teresa Reynolds, Legal Services Group Leader, Office of Legal Services, Colorado Department of Corrections and indicated that Defendant Elrid "is not a DOC employee, nor is he listed on the DOC Panel of Medical Consultants for Indemnification." (*See* Doc. # 46).  As previously noted by the court, Defendant Elrid has not been served in this action as he is not employed at the Colorado Department of Corrections and cannot be served by the U.S. Marshal at the address provided by Mr. Estes.  (*See* Doc. # 60 at n. 1).

Fed. R. Civ. P. 4(m) provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action:

> "[i]f a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Defendant Elrid was named as a Defendant in this case upon  the filing of the Amended Complaint (Doc. # 37) on November 29, 2010.  (*See* Courtroom Minutes/Minute Order (Doc. # 39)).  As of this date, more than 120 days has passed since the filing of the Amended Complaint and the record before the court indicates that Defendant Elrid has not been served with a summons and complaint in this action, service has not been waived on his behalf, and he has not appeared in this action.

A court cannot obtain personal jurisdiction over a party without proper service of process.  *See Murphy Brothers, Inc v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Before a . . . court may exercise personal jurisdiction over a defendant, the

procedural requirement of service of summons must be satisfied.") (citation omitted); *Oklahoma Radio Associates v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) ("Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served") (citations omitted); *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case.").

While an incarcerated *pro se* plaintiff proceeding *in forma pauperis* is entitled to rely on the U.S. Marshal for service of the summons and complaint, there is no indication in this case that the U.S. Marshal or the court clerk have failed to perform their duties to serve Defendant Elrid. Defendant Elrid cannot be served at the address provided by Mr. Estes. The court need not require the U.S. Marshal or the court clerk to search for or make any further attempts to serve Defendant Elrid. Mr. Estes has not requested or shown good cause for an extension of time to serve Defendant Elrid. Sufficient time has been afforded and sufficient efforts have been made to serve Defendant Elrid such that Defendant Elrid may properly be dismissed for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

Accordingly, IT IS RECOMMENDED that:

1.      Defendants Fortunato and Negley's Motion to Dismiss (filed December

13, 2010) (Doc. # 41) be GRANTED.

2.      Defendant Moon's Motion to Dismiss (filed February 14, 2011) (Doc. # 57) be GRANTED.

3.      Defendant Elrid be dismissed for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

4.      No claims or Defendants remaining, this civil action be dismissed in its entirety.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right

to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 9th day of August, 2011.

BY THE COURT:


___s/Craig B. Shaffer_____
United States Magistrate Judge